2012 OK 108

**STATE of Oklahoma, ex rel., OKLAHOMA BAR ASSOCIATION, Complainant,**

v.

**Robert Samuel KERR, IV, Respondent.**

**SCBD No. 5869.**

Supreme Court of Oklahoma.

Dec. 11, 2012.

Gina Hendryx, Oklahoma City, for the Complainant.

J.W. Coyle, and Joseph Vorndran, Oklahoma City, for the Respondent.

WINCHESTER, J.

¶ 1 The Oklahoma Bar Association filed with the Supreme Court certified copies of the Information, Alford Plea and Summary of Facts Part A: Findings of Fact; Acceptance of Plea and Plea of Guilty Part B: Sentence on Plea filed in a proceeding in the District Court of Oklahoma County, State of Oklahoma, Case No. CF–2010–5114 styled, "*State of Oklahoma v. Robert Samuel Kerr, IV.*" The Supreme Court of Oklahoma entered an order of immediate interim suspension pursuant to Rule 7.3 of the Rules Governing Disciplinary Proceedings, 5 O.S.2011, App. 1–A (hereafter "RGDP"). The Respondent requested a hearing and following the procedures set forth in Rule 6, RGDP, the PRT held a hearing on July 30, 2012.

*FINDINGS OF FACT*

¶ 2 Respondent was admitted to the Oklahoma Bar in September 2006, and became an associate attorney with the firm of Ogle & Welch. He handled all misdemeanor cases for the firm. In the spring of 2007, Ogle & Welch undertook representation of Jeremy Stapely, who was charged in Oklahoma County District Court with driving under the influence. Respondent served as defense counsel for Stapely. On the criminal aspect of the case, Stapely received a deferred sentence, but he was then scheduled for a driver's license revocation hearing with the Department of Public Safety. Attorneys at the firm of Ogle & Welch initiated a series of steps to offer a bribe to an Edmond Police officer in exchange for his absence at the hearing. The officer in question reported the bribery attempt to his superiors and an investigation commenced.

¶ 3 On July 30, 2010, the Respondent was charged with the felony offense of offering a bribe, in violation of 21 O.S.2011 § 381 [1]. In April 2012, that charge was reduced under a plea agreement to a misdemeanor, obstruction of a public officer, in violation of 21 O.S.2011, § 540 [2]. Pursuant to the plea agreement, Respondent received a two-year deferred sentence and he remains on probation until April 5, 2014. Pursuant to Rule 7.2, RGDP, the information, judgment and sentence are conclusive evidence of the conviction of the crime upon which the proceeding is based and warrant the imposition of professional discipline.

*MITIGATION*

¶ 4 Several mitigating factors must be taken into consideration when deciding on the correct discipline in this case. Respondent was twenty-eight years old when the bribery incident occurred and had been an attorney less than a year. The respondent's uncle, David Ogle, was his principal employer and undoubtedly exercised more influence over him than would normally be found in an employer-employee relationship, given the added component of familial relationships.

---

**1.** 1999 Okla. Sess. Laws, 1st Ex.Sess., ch. 5, § 97   **2.** R.L.1910, § 2252

Respondent did not initiate the illegal scheme and acted under the direction of his supervisors, Josh Welch and David Ogle. No evidence indicates Respondent benefitted personally from the bribery conspiracy. The Respondent has cooperated with the Bar Association and with other authorities investigating the matter and has agreed to assist in future prosecutions. No other grievances have been filed against the Respondent and he has complied with the terms and conditions of his deferred sentence.

## ANALYSIS

¶5 Rule 8.4 of the Rules of Professional Conduct, 5 O.S.2011, App. 3–A provides:

"It is professional misconduct for a lawyer to: a) violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another; b) commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects; c) engage in conduct involving dishonesty, fraud, deceit or misrepresentation; d) engage in conduct that is prejudicial to the administration of justice; e) state or imply an ability to influence improperly a government agency or official or to achieve results by means that violate the Rules of Professional Conduct or other law."

¶6 Respondent's participation in events leading to his conviction is a clear violation of these rules. Although he was directed to take this action, Respondent testified he knew "that what I was doing and what I did was wrong."

¶7 In *State ex rel. Oklahoma Bar Association v. Evans*, 1987 OK 108, ¶8, 747 P.2d 277, 280 the Court offers clear guidance on why the action of attorneys in these kinds of cases cannot go unchecked.

"The suggestion that justice is to be had for a price must, of necessity, foster apprehension and mistrust in the administration of justice. The fact that they were spoken by an officer of this Court is most unfortunate. When the conduct examined here is viewed from the perspective of the public officials who were said to be receptive to such a scheme, the personal harm done to their reputation in the community is self-evident."

In *Evans*, no funds were actually exchanged; the respondent was suspended for four years for asking his client if he would be willing to make a campaign contribution to certain public officials if that was necessary to prevent the filing of the charges. Unlike the matter at hand, the District Attorney and OSBI declined to file criminal charges against Evans, though it sheds light on the seriousness of interfering with the administration of justice.

¶8 The Court previously offered insight in this area in *State ex rel. Oklahoma Bar Association v. James*, 1969 OK 119, ¶23, 463 P.2d 972, 977

"Such activities . . . . brings shame and disrepute to all members of the bench and bar, and cannot do else, if continued, but to destroy our system of justice which, in a free society, depends for its effectiveness upon the continued confidence and trust of the people. The people must be able to rely on the integrity and honesty of their judges and lawyers, and it is the duty of this Court, whenever conduct of a lawyer, such as reflected by this record, is brought to its attention, to prevent such individual from continuing to enjoy the solemn trust and high responsibility with which he was invested as a member of the Bar of this State."

¶9 One of the other attorneys involved in the incident this matter stems from resigned pending the disciplinary proceeding, making it five years before he can apply for reinstatement. Though Mr. Kerr makes a strong argument that he was instructed to do this by a supervisor who undoubtedly had more influence than the typical employer, the seriousness of his actions cannot be overlooked.

¶10 Suspension from the practice of law for two years and one day, beginning on the date of his interim suspension, April 19, 2012, is the appropriate discipline in this matter. Respondent is further ordered to

pay costs in the amount of $1,328.49 within 60 days of the date of this opinion.

RESPONDENT SUSPENDED FOR TWO YEARS AND A DAY AND ORDERED TO PAY COSTS

CONCUR: TAYLOR, C.J., COLBERT, V.C.J., WATT, WINCHESTER, and REIF, JJ.

DISSENTS: EDMONDSON, J.

NOT PARTICIPATING: KAUGER, COMBS, and GURICH, JJ.